**SO ORDERED.**

**SIGNED** this 2nd day of November, 2015.



LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOSEPH JAMES NOVARA and | ) | |
| LINDA LEE NOVARA, | ) | CASE NUMBER: 14-81072 |
| | ) | CHAPTER 7 |
| Debtors. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| NORTHEN BLUE, LLP, Chapter 7 | ) | |
| Trustee for Joseph James Novara | ) | |
| and Linda Lee Novara | ) | |
| | ) | ADVERSARY PROCEEDING |
| v. | ) | NO.: 15-09005 |
| | ) | |
| LINDA LEE NOVARA, as custodian | ) | |
| for her minor children. | ) | |
| _____ | ) | |

**OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

This matter came before the court on September 22, 2015 upon the Trustee's Motion for Summary Judgment. John Paul H. Cournoyer appeared for the Chapter 7 Trustee, and James White appeared for Debtor and Defendant, Linda Novara. After reviewing the parties' motions, briefs, and oral arguments, this court finds as follows:

1

## FACTUAL BACKGROUND

Joseph and Linda Novara ("the Debtors") filed a voluntary Chapter 7 Petition on September 30, 2014. The Debtors scheduled two custodial savings accounts for their minor children, for which Ms. Novara serves as the custodian. On September 3, 2014—twenty seven days before the Debtors filed their case—Ms. Novara deposited a check dated July 11, 2014 written by Anita Brandariz, her mother, for the sum of $10,000.00 ("the Check") into one of the two custodial accounts. On the Check, the line marked "Pay to the Order of" bore Ms. Novara's name only. Ms. Novara alone indorsed the Check before depositing it into the custodial account.

The Trustee initiated this adversary proceeding seeking a judgment avoiding and setting aside the Check, and an order compelling Ms. Novara to turn over the $10,000.00 held in the custodial account under 11 U.S.C. § 550(a)(1) (2012).[1] In the complaint, the Trustee alleged that Ms. Novara had an interest in the Check; that Ms. Novara deposited the Check within two years before the petition date; that Ms. Novara received less than a reasonably equivalent value in exchange for the Check; and that Ms. Novara was insolvent when the Check was deposited. In her answer, Ms. Novara raised as an affirmative defense the North Carolina Uniform Transfers to Minor Act ("UTMA"), N.C. GEN. STAT. § 33A–1-24 (2015), as an affirmative defense, claiming that because Ms. Brandariz intended the Check as a gift for Ms. Novara's children, and since Ms. Novara deposited the Check into a custodial account, Ms. Novara never had an interest in the Check or the funds deposited. The Trustee responded with a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, incorporated by reference in Bankruptcy Rule 7056.

---

[1] This adversary proceeding originally consisted of two claims filed by the Trustee against Ms. Novara to recover fraudulent transfers. This opinion addresses on the first claim; the second claim was settled by the parties.

**APPLICABLE LEGAL STANDARD**

Summary judgment is appropriate when it can be demonstrated to the Court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the Court must view "the facts and inferences in the light most favorable to the non-moving party." *United States v. Leak*, 123 F.3d 787, 794 (4th Cir. 1997) (citing *Donmar Enters., Inc. v. Southern Nat'l Bank of N.C.*, 64 F.3d 944, 946 (4th Cir.1995)).

To satisfy a motion for summary judgment premised on a fraudulent transfer, the Trustee must be able to meet four elements: (1) the debtor must have an interest in the property; (2) the transfer must have been made within two years before the date of filing the petition; (3) the debtor must have received less than a "reasonably equivalent value" in exchange for the transfer; and (4) the debtor must have been insolvent on the date that the transfer was made. 11 U.S.C. § 548(a)(1)(B)(i) (2012).

**DISCUSSION**

It is undisputed that Ms. Novara deposited the Check into her child's custodial account twenty seven days before filing for bankruptcy, received no value in exchange, and was insolvent at the time of the transfer. The only disputed issue in this adversary proceeding is whether Ms. Novara had an interest in the Check. Whether Ms. Novara had any interest in the Check drafted by Ms. Brandariz depends on whether the Check, payable to Ms. Novara alone, can nonetheless be considered the property of Ms. Novara's minor children due to Ms. Novara's role as custodian. Whether a debtor has an interest in any particular piece of property in bankruptcy is a question left to state law for resolution. *Butner v. United States*, 440 U.S. 48, 54-55 (1979).

Custodial property for the benefit of a minor is generally governed by § 33A-9 of the UTMA. Section 33A-9 reads, in part:

> (a) Custodial property is created and a transfer is made whenever:
> . . .
> (2) Money is paid or delivered . . . to . . . an adult other than the transferor . . . followed in substance by the words: "as custodian for _____ (name of minor) under the North Carolina Uniform Transfers to Minors Act"
> . . .

N.C. GEN. STAT. § 33A-9(a)(2). North Carolina law is clear that such property, so devised, belongs to the minor. "A transfer made pursuant to G.S. 33A-9 is irrevocable, and the custodial property is indefeasibly vested in the minor . . . ." N.C. GEN. STAT. § 33A-11(b). If indeed the Check was a transfer from Ms. Brandariz to her grandchildren via Ms. Novara as custodian, then the Check would be outside the scope of this bankruptcy and unreachable by the Trustee as it would not be Ms. Novara's property. Cf. *Jimenez v. Brown*, 509 S.E.2d 241, 245 (N.C. App. 1998) ("In fact, all the evidence before us leads to the conclusion that the account was properly created pursuant to UTMA and thus is not subject to attachment because it is the minor's property.")

As the Trustee correctly notes, the Check lacks language tracking § 33A-9(a)(2) for the transfer to be covered under the UTMA. The Check is payable to Ms. Novara alone, and contains no memorandum or attachment evidencing that the money transfer is custodial in nature. Ms. Novara offers two responses, arguing either that the Check is a means of asset transfer covered under the UTMA for which no language requirements exist, or in the alternative that the UTMA covers the Check as a valid transfer from Ms. Brandariz to her grandchildren despite noncompliance with the UTMA's language requirement. Neither response is persuasive, though, to overcome a lack of adherence to the requirements of the UTMA.

First, Ms. Novara argues that the Check complies with the UTMA because the language

requirements of § 33A-9(a)(2) cannot be obligatory in all instances where the UTMA applies. Ms. Novara reasons that cash transfers in denominated bills can qualify as a transfer under the Act, and there is no means to indicate the intended recipient of the transfer on currency. This argument, however, is of little merit. First, the statute does not require that the language be on the check or money itself. Indeed, § 33A-9(b) provides a form that satisfies the transfer language requirements for other kinds of interest transfers under the UTMA. Such a form could have accompanied the Check, or in the alternative custodial language could have been written on the Check, providing a clear indication of Ms. Brandariz's intent.

More importantly, to argue that a cash transfer defeats the necessity to earmark a transfer as custodial ignores the history and purpose of the UTMA. The UTMA is itself an update of the Uniform Gifts to Minors Act ("UGMA"), adopted in 1956 and modeled on "Act concerning Gifts of Securities to Minors" in place in 14 states. NAT'L CONF. OF COMM'RS ON UNIF. STATE LAWS, UNIFORM TRANSFERS TO MINORS ACT 3 (1986). The UGMA's predecessor Act had been drafted by the New York Stock Exchange and the Association of Stock Exchange Firms, and focused on effectuating securities transfers only, and the UGMA expanded the Act to include money transfers. *Id*. The origins of cash transfers under the UGMA, and later the UTMA, suggest that cash ought to be treated like a security in requiring evidence of the intent to transfer funds to a minor through a custodian. Thus, Ms. Novara's contention that cash could be transferred without language tracking the UTMA, and by extension the Check as a vehicle for cash transfer, is misplaced.

Second, and more substantially, Ms. Novara reasons that, since the UTMA covers transfers that imperfectly comply with the language of the statute, the Check in question can nonetheless constitute a transfer to a minor under the UTMA, thus eliminating any potential

interest in the Check that Ms. Novara may have otherwise had. In her response brief, Ms. Novara points to § 33A-2(d), which states, "This Chapter shall not be construed to be the exclusive procedures for transferring property interests to minors and any other procedure for such transfers authorized by the law of this State and, not specifically repealed shall continue in effect." N.C. GEN. STAT. § 33A-2(d); Def.'s Resp. at 4. Ms. Novara points to § 33A-2(d) as evidence that the language on which the Trustee is focusing is not "magic language." Def.'s Resp. at 4. She further argues that the transfer complies with the UTMA by being made to a custodian pursuant to § 33A-4 as soon as practicable pursuant to § 33A-9(c). NC. GEN. STAT. § 33A-4, 9(c); Def.'s Resp. at 4.

    Ms. Novara's second argument also fails, though, on multiple bases. First and foremost, Ms. Novara's reading of § 33A-2(d) is incorrect; it is not that § 33A-2(d) works to cover transfers under § 33A-4 that lack the requisite language set forth in § 33A-9(a)(2), but rather that this one statute is not the exclusive means by which a transfer to a minor can be accomplished. Additionally, § 33A-4 authorizes transfers to custodians on behalf of minors *pursuant to §33A-9*. N.C. GEN. STAT. § 33A-4. Ms. Novara cannot avoid the requirement that the custodial intent be evidenced by merely pointing to a transfer to an individual who also happens to be a custodian, and arguing that once that individual deposits that transfer in the minor's account, a complete transfer has occurred under the UTMA. Furthermore, on its face, the Check could have been deposited in any account. No institution would have been incorrect in assuming that the Check reflected a transfer from Ms. Brandariz to Ms. Novara. Thus, this Court concludes that the Check was not a UTMA transfer from Ms. Brandariz to her grandchildren.

    Lastly, it was also suggested at the hearing by Ms. Novara that a note written by Ms. Brandariz accompanying the Check evidences donative intent under the UTMA. The body of the

note reads:

> I'm 81½ years old and feel that it's not likely I'll be around for [redacted] and [redacted] H.S. and college graduations. So – I'm sending the money to put away for the future. Their cousins were given $2000 for each graduation (so that's $4000—for each little lady). The remainder is for Birthdays and Xmases. OK?

Pl.'s Mem. Supp. Mot. Summ. J Ex. B, at 11. Ms. Novara argues that this note shows clear donative intent for the Check to have been a transfer to Ms. Novara as custodian, rather than simply to Ms. Novara.

However, the note is not so clear. The note does not recognize Ms. Novara as custodian, nor does it direct that the Check be deposited in a custodial account. Rather, it merely requests that the money being gifted go to Ms. Novara's children. A plain reading of the note could just as easily suggest that Ms. Novara deposit the Check in her own account and use it to pay for gifts and graduations as it suggests Ms. Novara's interpretation that it is a directive to deposit the Check in accordance with her responsibilities as custodian for her minor children. Even assuming that Ms. Brandariz has the requisite donative intent to gift her grandchildren via the Check to Ms. Novara, the note does not, in substance, meet the requirement of § 33A-9(a)(2).

That Ms. Brandariz's Check is not covered under the UTMA is not fatal to Ms. Novara's case, as the UTMA does leave room for an alternate method of transfer under North Carolina state law. N.C. GEN. STAT. § 33A-2(d). Whether the Check may qualify as a common law inter vivos gift from Ms. Brandariz to her grandchildren, or in the alternative whether the Check may fall under the U.C.C., are questions of North Carolina law. Regardless of the legal alternative, the question of donative intent predominates. N.C. GEN. STAT. § 25-3-110(a);[2] *Fesmire v. First*

---

[2] "The person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person. If more than one person signs in the name or behalf of the issuer of an instrument and all the signers do not intend the same person as payee, the instrument is payable to any person intended by one

*Union Nat. Bank of N.C.*, 148 S.E.2d 589, 591-92 (N.C. 1966) (stating that an inter vivos gift requires donative intent and actual or constructive delivery). And, donative intent is a question of fact. *See*, *Buffaloe v. Barnes*, 38 S.E.2d 222, 227 (N.C. 1946) ("To determine the requisite intent to make a present gift of a joint interest requires consideration of all the facts attendant upon the creation of the purported interest."); *Fortner v. Hornbuckle*, 761 S.E.2d 683, 687 (N.C. Ct. App. 2014) ("Accordingly, where evidence is introduced that calls into question the intention of the grantor, an issue of fact exists for resolution by the jury and the entry of a directed verdict on that issue is improper.").

The note alone—with its various ambiguities—is insufficient evidence from which to conclude that Ms. Novara never had an interest in the Check. In determining Ms. Brandariz's intent, "[t]he evidence most relevant in determining donative intent [or the lack of donative intent] is the donor's own testimony." *Burnett v. Burnett*, 471 S.E.2d 649, 651 (N.C. App. 1996) (quoting BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5.16, at 195 (2d ed.1994)). However, the burden that Ms. Novara faces at present is a distinct and lesser burden. To avoid summary judgment, Ms. Novara needs merely to demonstrate, with all valid inferences made in her favor, that a genuine issue of material fact exists. As the donative intent of Ms. Brandariz, a genuine issue of material fact, has been raised in this adversary proceeding, this Court is forced to conclude that summary judgment is inappropriate.

Based upon the foregoing, the Trustee's Motion for Summary Judgment is denied.

So Ordered.

**END OF DOCUMENT.**

---

or more of the signers."

Parties to be Served
Northern Blue vs. Linda Lee Novara
Adv. Proceeding No. 15-9005


Linda Lee Novara
18 Wedgewood Ct.
Chapel Hill, NC 27514

James C. White
Parry Tyndall White
100 Europa Dr. Suite 401
Chapel Hill, NC 27517

Northen Blue, LLP
Chapter 7 Trustee
1414 Raleigh Road, Suite 435
Chapel Hill, NC 27517

William Miller
Bankruptcy Administrator
101 South Edgeworth St.
Greensboro, NC 27401